[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By amended complaint dated September 13, 1996 the plaintiff seeks to foreclose a mortgage dated June 26, 1992 on a parcel of land known as 1572 Boston Turnpike, Coventry, Connecticut. The plaintiff also seeks a judgment against the defendant, Boleslaw Pietras, the maker of the plaintiffs mortgage note, for failure to make payments in accordance with the note. Additionally in various counts of the complaint the plaintiff alleges that the defendant, B. Pietras, fraudulently conveyed his interest in the real estate to his relative and co-defendant, Frank Pietras. Finally the plaintiff claims that the defendants, B First Mortgage Company and First National Bank of Chicago, slandered his mortgage title by filing a document on the land records that effectively discharged his mortgage. The plaintiff also claims that his mortgage is superior to and prior in right to a mortgage on the land records to defendant, Parkway Mortgage Company.
The plaintiff appeared pro se at trial and defendants, Parkway, B First, and First National Bank appeared through counsel. The defendants, B. Pietras and F. Pietras did not appear in this matter and were defaulted on March 31, 1995.
The court finds the following facts. On May 21, 1992 B. Pietras executed a note in favor of the plaintiff in the amount of $10,100. Plaintiff's Exhibit A. On June 26, 1992 B. Pietras secured this obligation by executing and delivering to the plaintiff a mortgage dated June 26, 1992 and recorded in the CT Page 10967 Coventry land records on October 9, 1992. This note represented a consolidation of two previous notes in favor of the plaintiff in the amounts of $8650. and $13,000. B. Pietras, who at that time was friends with the plaintiff, failed to make any payments on the $10,100. note. In September of 1994, B. Pietras approached the plaintiff and requested that the plaintiff accept a twenty-five percent reduction in the note. B. Pietras indicated to the plaintiff that he needed this reduction in order to be able to refinance the property. The plaintiff indicated a willingness to do so and told B. Pietras that he would accept a replacement note in the amount of $9000. in lieu of the $11,985.33 then owed. Shortly thereafter B. Pietras again approached the plaintiff and told him that the mortgage company was requiring a greater amount of forgiveness than the twenty five percent to which the plaintiff had agreed. The plaintiff told B. Pietras that he needed the money and that he would be willing to accept a cash payment of $6000. and a note for $3,000. The defendant agreed and on September 29, 1994 B. Pietras executed a promissory note in the amount of $3,000. Plaintiff's Exhibit J. Unbeknownst to the plaintiff, B. Pietras had quit-claimed the property to F. Pietras on August 19, 1994. Plaintiffs Exhibit K. On September 29, 1994 the plaintiff executed and delivered to B. Pietras a document entitled "Affidavit in Support of Boleslaw Pietras Application to Refinancing His Mortgage." The relevant paragraph of that application states that "I am willing to accept the amount of $6,000. in the hope that other debtors also cooperate with Mr. Pietras, like the Hartford Courant by reducing the amount they will accept in full payment of his debt to them." Defendant's Exhibit 4. The affidavit did not state that the plaintiff was also to receive a note in the amount of $3,000. The testimony indicates, and the court so finds, that the $3,000. was intended to be an unsecured obligation of B. Pietras. The plaintiff believed, however, that the property was still titled in the name of B. Pietras and therefore subject to attachment to satisfy any obligation owe the plaintiff after default.
On October 13, 1994, the mortgage from B First Mortgage Company was executed and on October 18, 1994 a check in the amount of $6,000. was hand delivered to the plaintiff at the Coventry town hall. The check was accepted by the plaintiff and negotiated by him. On the face of the check was typed "Pietras/Payoff." The mortgage from B First Mortgage was subsequently assigned to Texas Commerce Bank National Association and was re-assigned to First National Bank of Chicago, Trustee on CT Page 10968 February 28, 1995. Paragraph 7, count one, Amended Complaint, September 13, 1996. On March 10, 1995, the plaintiff was notified by counsel to B First Mortgage that more than thirty days had passed since the payment of $6,000 and he had not yet received a release of plaintiff's mortgage. Counsel further advised of his intent to file an affidavit on the land records "if a Release was not received by this office on or before March 27, 1995." Defendant's Exhibit 4. The plaintiff, who admitted receiving the letter, failed to reply. On March 28, 1995, counsel filed an affidavit pursuant to General Statutes § 49-8a. Attached to the affidavit was the March 10, 1995 letter to the plaintiff, a copy of the $6,000. check, and a copy of the plaintiffs affidavit dated September 29, 1994 indicating the willingness to accept $6,000. in satisfaction of the debt owed him. Defendant's Exhibit 4.
On December 22, 1995 F. Pietras granted a mortgage to Parkway in the original principal amount of $91,800. This mortgage paid off the mortgage from F. Pietras to B First Mortgage. The defendants, B First Mortgage and First National, claim no present interest in the property. At trial no evidence was offered as to the solvency of B. Pietras nor was any evidence offered with respect to the value of the property transferred. Additionally no evidence was offered with respect to the motivation of B. Pietras in the August 19, 1994 transfer of property to F. Pietras. Nor was any evidence offered as to what knowledge F. Pietras may have had with respect to the transfer. Furthermore no evidence was presented as to the consideration, if any, that was exchanged for the transfer of the real estate between B. Pietras and F. Pietras.
In order for the plaintiff to prevail on his claim that the August 19, 1994 transfer of realty was fraudulent he must demonstrate that "(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." General Statutes §52-552e(a). With respect to subsection (2) of the statute the plaintiff offered no evidence to support a finding that no reasonably equivalent value was given by F. Pietras for the CT Page 10969 transfer of the realty. While the deed recites "for one dollar and other good and valuable considerations", Plaintiff's Exhibit K, no evidence was introduced as to the full consideration paid. The plaintiff has failed to satisfy his burden of proof as to the lack of adequate consideration.
As to General Statutes § 52-552e(a)(1) the plaintiff must establish that the defendant actually intended to hinder, delay, or defraud any creditor of the debtor by virtue of the transfer. Some of the factors to be considered in making this determination are set forth in General Statutes § 52-552e(b) which states: "b) In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." Of the eleven factors set forth the plaintiff only offered evidence that F. Pietras was an "insider". The plaintiff has failed to sustain his burden of proving that the defendant, B. Pietras, had the actual intent to hinder, delay or defraud creditors.
The plaintiff also cannot prevail under General Statutes § 52-552f. That section requires that the plaintiff demonstrate that the transfer occurred without the defendant receiving reasonably equivalent value for the transfer and that he was insolvent at the time of the transfer or that the transfer rendered the defendant insolvent as a result of the transfer. As previously noted no evidence was offered with respect to the defendant's solvency.
The plaintiff also claims that as a result of the filing of the affidavit by B First Mortgage on the land records the CT Page 10970 plaintiffs title was slandered. However no reasonable inference can be drawn from the evidence that the defendant, B First Mortgage, in recording the affidavit acted with malice as would be required under the statute or under the common law. Thus the facts do not support the Plaintiff's claim of slander of title. It should also be noted that the plaintiff took no action to protect any interest he felt he had in his mortgage when he received notice of the defendant's intent to file the affidavit releasing his mortgage. The plaintiff, who was a real estate broker prior to retirement, knew or should have known the effect that the filing of the affidavit on the land records would have and should have taken appropriate action to protect his interest upon the receipt of the notice. The defendant, Parkway, who claims a present mortgage interest in this real estate, was fully within its rights to rely on the affidavit that was recorded under the authority of the General Statutes § 49-8a. There is no evidence that it had any actual or constructive knowledge of the claims or disputes between the plaintiff and the other defendants.
The final issue presented is whether the plaintiff has the right to enforce the $10,100 note dated May 21, 1992 or was this note extinguished by the $6000 payment and substitute $3,000 note. In order for the $3,000. note to extinguish the earlier obligation the plaintiff and the defendant must be found to have entered into a substitute contract. That substitute contract must be supported by consideration. Vachon v. Tomasoak,155 Conn. 52, 56, 230 A.2d 5 (1967)[1]. The court finds that the $3,000. note and the $6,000. cash payment provided no additional consideration to the plaintiff. Under this arrangement the plaintiff received no increase in the interest rate on the note, the $6000. payment was equivalent to the past due payments under the original $10,100. note, and the plaintiff received less security for the repayment of the obligation. In short, the defendant gave no additional consideration to support the substituted contract. Therefore the $3000. obligation and $6,000. cash payment did not extinguish the $10,100. note.
In light of all of the above, the court finds for the defendants on Counts 1, 3, 4, 5, 6. and 7. On Count 2 the court enters judgment for the plaintiff on the note of May 21, 1992 in the amount of $7918.59 representing both unpaid principal and interest through October 15, 1997. Finally the court finds that the mortgage dated June 26, 1992 and recorded in the land records of the town of Coventry at Volume 472, Page 110 on October 9, CT Page 10971 1992 has been released by virtue of the March 28, 1995 Affidavit recorded at Volume 538, Page 237 of the same land records.
Zarella, J.